**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ELI ALBRECHT,<br>ALBRECHT LAW, LLC, and<br>ALBRECHT RITTER, PLLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>GENESIS CAPITAL, LLC,<br><br>    Defendant. | Case No.:<br><br><br>**COMPLAINT FOR**<br>**DECLARATORY JUDGMENT** |

Plaintiffs Eli Albrecht ("Mr. Albrecht"), Albrecht Law, LLC ("Albrecht Law"), and Albrecht Ritter, PLLC ("Albrecht Ritter," and together with Mr. Albrecht and Albrecht Law, "Plaintiffs"), by and through their counsel, file this Complaint for Declaratory Judgment against Defendant Genesis Capital, LLC ("Genesis").

**INTRODUCTION**

1.      Plaintiff Albrecht Ritter, PLLC ("Albrecht Ritter" or the "Firm") is a thriving law firm built for post-M&A disputes, including earn-outs, escrows, rollover equity, indemnification claims, post-closing litigation—all of which the Firm handles on both sides of the ledger, for buyers and sellers, claimants and defendants alike. Its lawyers work tirelessly, day and night, for founders, shareholders, executives, and businesses — frequently opposite far larger, institutional, and better-resourced adversaries — to vindicate their clients' rights, to see that commercial wrongs are righted, and to make the civil justice system work the way it is supposed to: efficiently, honestly, and on the merits.

2.      This dispute arises from Genesis's campaign to coercively extract a million dollars from Mr. Albrecht and Albrecht Law by casting a cloud of baseless allegations against all three Plaintiffs, merely because one of the Firm's members, Travis Robert-Ritter is a debtor of Genesis.

3.    To be clear: Plaintiffs do not dispute that Genesis holds a money judgment against Mr. Robert-Ritter. Nor do Plaintiffs ask this Court to erase that judgment, discount it, or shelter Mr. Robert-Ritter from it. To the contrary, Plaintiffs expect that Genesis will ultimately be paid in full — and Mr. Robert-Ritter has tried, at every turn, to engage Genesis in earnest negotiation toward exactly that end. As explained herein, however, Genesis chose confrontation and intimidation over information and collection, culminating in a million-dollar demand that has cast a cloud over Plaintiffs' ability to operate in the ordinary course.

4.    The stakes of that choice are not abstract. The Firm currently has matters representing over $40 million in contingent fees at issue, expected to be resolved within the next eighteen to twenty-four months. That pipeline — the product of the Firm's skill, judgment, and around-the-clock work — is by far the most realistic source of the very recovery Genesis professes to want. A rational creditor would protect that engine. Genesis, however, has instead spent months trying to cloud it and dismantle it.

5.    Genesis's efforts are already causing concrete harm impeding the firm's ordinary-course operations. For example, the Firm stands at the letter-of-intent stage with a litigation funder — days from entering diligence, approximately thirty days from a contemplated closing. It is also actively hiring equity partners to grow the litigation practice. Both of these workstreams require disclosures concerning threatened claims against the Firm and its principals that cannot be made while Genesis's accusations hang unresolved. Moreover, under Genesis's theories, the Firm's issuance of company-created equity to hire equity partners — and Mr. Albrecht's vote for it — could itself be mischaracterized as participation in a voidable transfer. The Firm has paused both transactions. That is a present and continuing injury to the Firm and a present and continuing impairment of Mr. Albrecht's membership interest.

6.      But the stakes extend well beyond this case. At issue is a principle at the core of American law: the ability of a debtor to start over, to work, to build something new, and to pay his creditors out of what he builds. The law strikes that balance deliberately: it arms creditors with powerful tools — execution, garnishment, charging orders — while preserving the debtor's ability to earn, precisely because a debtor who can earn is a debtor who can pay. Also at issue is the right of the new business, and of everyone who works alongside a debtor, to be free of baseless and vexatious threats, serial attacks, and an ever-escalating extraction campaign.

7.      That campaign culminated on March 16, 2026, when Genesis's counsel demanded that Mr. Albrecht and Albrecht Law — neither of whom is a judgment debtor of Genesis — pay $1 million within seven days or face suit for "fraudulent conveyance," conspiracy, and related theories. Genesis then let its own deadline lapse without filing suit. And even after receiving notice of the concrete harm its unresolved accusations were inflicting, Genesis persisted in its threats.

8.      The Firm appears in this action for one purpose: to dissipate the clouds that Genesis's accusations — suggesting that its formation, its client engagements, its revenues, or its ordinary-course governance somehow constitute a fraudulent conveyance — have hung over it. The remedies that Genesis is currently availing itself of in a separate proceeding before the Circuit Court in Miami Dade, Florida — including a charging order under Florida law — are not before this Court.  Plaintiffs do not ask this Court to rule on those questions, and principles of (among other things) comity counsel against doing so.

9.      Plaintiffs bring this action so that a court can declare the Plaintiffs' rights, rather than allow a demand letter's baseless allegations to *de facto* impair them.

10.     Plaintiffs seek judicial declarations against Genesis that Mr. Robert-Ritter never held any membership, ownership, or other transferable interest in Albrecht Law, LLC (something

a Maryland court already found in a proceeding without Genesis); that the formation of Albrecht Ritter, PLLC created new equity in a new firm and transferred no asset of Mr. Robert-Ritter; that no Plaintiff — the Firm included — is the transferee or beneficiary of any transfer of Mr. Robert-Ritter's assets, or a conspirator in any scheme to hinder his creditors; that the Firm's client engagements and revenues are its own property, acquired through its own contracts for value; and that the Firm may, in the ordinary course of business, admit new members for reasonably equivalent value to grow its litigation practice, and secure financing, without those routine acts of business being branded as voidable transfers.

11.     With the parties' rights so declared, the cloud Genesis has deliberately cast over Mr. Albrecht, Albrecht Law, the Firm, its members, its employees, and more will be lifted, and the Firm can return its full energies to the work its clients hired it to do.

## PARTIES

12.     Plaintiff Eli Albrecht is an individual domiciled in Dallas, Luzerne County, Pennsylvania. Accordingly, he is a citizen of Pennsylvania.

13.     Plaintiff Albrecht Law is a limited liability company organized under the laws of Delaware, whose sole member is Mr. Albrecht, who is a citizen of Pennsylvania. Accordingly, it is a citizen of Pennsylvania.

14.     Plaintiff Albrecht Ritter is a professional limited liability company organized under the laws of Florida. Its members are Mr. Albrecht, a citizen of Pennsylvania, and Mr. Robert-Ritter, a citizen of Florida. Accordingly, Albrecht Ritter is a citizen of Pennsylvania and Florida. As noted, Albrecht Ritter appears in this action solely to resolve the transfer question raised by Genesis's accusations and for no other purpose; it seeks no ruling concerning Genesis's enforcement remedies against Mr. Robert-Ritter, which are properly and actively before the Florida court.

15.     On information and belief, Defendant Genesis is a limited liability company. Genesis is wholly owned by NRZ Services Holdings LLC, a limited liability company that is in turn wholly owned by NRZ Mortgage Holdings LLC, a limited liability company wholly owned by Rithm Capital Corp., a corporation incorporated in Delaware with its principal place of business in New York, New York. Accordingly, on information and belief, Genesis is a citizen of Delaware and New York, and no member in its ownership chain is a citizen of Pennsylvania or Florida.

### JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(a), because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17.     Plaintiffs are citizens of the States of Pennsylvania and Florida, and Defendant is a citizen of the States of Delaware and New York. No Plaintiff shares citizenship with Defendant for purposes of diversity jurisdiction, and therefore complete diversity exists.

18.     Genesis has demanded $1,000,000 from Mr. Albrecht and Albrecht Law on threatened claims that necessarily run against Albrecht Ritter as the alleged transferee, and the value of the rights and transactions clouded by its accusations — including the Firm's paused litigation-financing and equity-admission transactions — exceeds the threshold as to each Plaintiff.

19.     An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties, as set forth in the Factual Allegations below.

20.     This Court has personal jurisdiction over Genesis because Genesis purposefully directed its activities at Pennsylvania and Plaintiffs' claims arise out of those activities. Genesis obtained the underlying judgment in the Pennsylvania courts and has continuously enforced it there. And, among other things, Genesis caused a writ of execution to be served on Mr. Albrecht and Albrecht Law in Luzerne County, Pennsylvania, filed a (meritless) motion for sanctions

against Mr. Albrecht in the Court of Common Pleas of Luzerne County, took Mr. Albrecht's deposition in Wilkes-Barre, Pennsylvania, and directed into Pennsylvania, to Pennsylvania counsel for a Pennsylvania resident, its demands for payment premised on the formation and operation of Albrecht Ritter. Pennsylvania's long-arm statute reaches Genesis to the full extent permitted by the Due Process Clause, and the exercise of jurisdiction comports with due process.

21.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, including the Luzerne County writ of execution, the sanctions motion filed in the Court of Common Pleas of Luzerne County, Mr. Albrecht's deposition in Wilkes-Barre, and its demand for payment on legally baseless grounds. Because venue rests on where these events occurred, it is proper here regardless of Genesis's residence.

## FACTUAL ALLEGATIONS

22.     On June 26, 2024, Genesis obtained a money judgment against Travis Robert-Ritter in the Court of Common Pleas of Philadelphia County, No. 231101649. All amounts stated in this Complaint concerning that judgment are based on Genesis's own representations. Plaintiffs are not parties to the judgment and do not contest it here.

23.     In December 2024, Mr. Robert-Ritter (then unrepresented) voluntarily met with Genesis's counsel, stating that the purpose of the meeting was to discuss a plan to pay down the judgment. In February 2025, Mr. Robert-Ritter voluntarily sat for a deposition. During these meetings, Genesis's counsel indicated that Genesis was not interested in a payment plan or collection from Mr. Robert-Ritter, and instead proposed that Mr. Robert-Ritter participate in a scheme to collect against third parties, the particulars of which are known to Genesis and are not detailed here. Mr. Robert-Ritter declined. Genesis's counsel then escalated, threatening dire

personal and professional consequences for Mr. Robert-Ritter absent an agreement. Mr. Robert-Ritter declined again and reiterated that his focus was (and still is) repayment of the judgment.

24.     On January 23, 2025, Genesis domesticated the judgment in Miami-Dade County, Florida (No. 2025001121CA01).

25.     On February 4, 2025, with Genesis unwilling to meaningfully negotiate a payment plan, Mr. Robert-Ritter requested Genesis's wire instructions and began making voluntary weekly payments of $1,000, which continued thereafter.

26.     In March 2025, Mr. Robert-Ritter began work as an independent contractor for Albrecht Law, compensated on a 1099 basis for litigation work performed.

27.     That same month, Mr. Robert-Ritter updated his public LinkedIn profile and his Florida Bar profile to reflect the engagement.

28.     From the outset of the engagement in March 2025 — months before Genesis directed any process at Mr. Albrecht or Albrecht Law — Mr. Albrecht and Mr. Robert-Ritter discussed that success in a trial period would lead to an equity partnership in a litigation practice.

29.     Mr. Albrecht has at all times been Albrecht Law's sole member, and Mr. Robert-Ritter does not hold, and has never held, any membership, partnership, equity, or other ownership interest in it.

30.     On May 19, 2025, Mr. Robert-Ritter requested an accounting of his voluntary payments. Genesis's counsel replied in writing: "Why don't you add up the payments and send us the number."

31.     On May 22, 2025, Mr. Robert-Ritter voluntarily transmitted to Genesis four months of account statements and a notarized Information Fact Sheet reflecting that he is an independent

contractor of Albrecht Law compensated on a 1099 basis. That documentation has been in Genesis's possession at all times since.

32.    Indeed, Albrecht Law issued Mr. Robert-Ritter a 1099 tax form for the taxable income Mr. Robert-Ritter earned from Albrecht Law in 2025.

33.    In August 2025, Genesis's counsel telephoned Mr. Albrecht and then e-mailed him a subpoena directed to Albrecht Law. Mr. Albrecht was then unrepresented.

34.    In September 2025, Mr. Robert-Ritter again contacted Genesis, proposing a structure to pay the judgment in full, and requesting a conversation. Genesis's response was to notice his deposition and to pursue collection against non-wage sources and bank accounts.

35.    In October 2025, Mr. Robert-Ritter began paying Genesis more than $20,000 per month, notwithstanding Genesis's refusal to negotiate a payment agreement. The approximately $56,000 Genesis has acknowledged receiving corresponds to Mr. Robert-Ritter's voluntary payments. Those payments ceased only when Genesis moved to garnish his sources of income and bank accounts.

36.    On October 16, 2025, Genesis took Mr. Robert-Ritter's deposition.

37.    On October 28, 2025, Genesis's counsel submitted an affidavit stating, among other things, that Mr. Robert-Ritter "provided only five months of recent Applied Bank statements" and that he "refused to make meaningful payments to Genesis from" the Applied Bank account. Statements from that same account had been in Genesis's possession since the May 22, 2025 transmittal described above, and the voluntary payments described above were made from that account — including the $20,000-plus monthly payments that began that same month.

38.    At no time, in any proceeding, has Genesis sought a charging order against any purported interest of Mr. Robert-Ritter in Albrecht Law. Genesis's own course of action is

therefore inconsistent with its apparent position in its demand letter that Mr. Robert-Ritter had an ownership stake in Albrecht Law.

39.     On November 2, 2025, Mr. Albrecht was served by a sheriff at his residence in front of his children, with a subpoena to testify and produce documents. The subpoena was issued from the Court of Common Pleas of Philadelphia County yet commanded a deposition in Washington, D.C. The deposition did not proceed on the initially noticed date of November 14, 2025, and was rescheduled by agreement amid disputes concerning service and scheduling.

40.     On November 14, 2025, after Genesis had rejected or ignored every payment proposal, Mr. Robert-Ritter retained counsel, Saxton & Stump, LLC (his first in the matter) to engage with Genesis concerning payment, to correct misstatements in the record, and to respond to the collection efforts described above.

41.     As described above, Mr. Albrecht and Mr. Robert-Ritter had discussed from the outset that a successful trial period would lead to an equity partnership in a litigation practice. After that successful trial run, Mr. Albrecht was impressed with Mr. Robert-Ritter's litigation aptitude. Mr. Robert-Ritter obtained strong results; clients trusted him and his work; the practice was growing at an ever-increasing rate; and the pair saw and planned to reinvest a material amount of income back into the business to grow the practice. Among a range of business reasons, Florida was the natural place for the new practice, such that Mr. Robert-Ritter is exclusively barred and domiciled in Florida, Mr. Albrecht was not ready to combine the M&A and litigation practice groups, the Florida bar rules permitted flexibility when structuring large flat-rate payments for commercial litigation (the bulk of the litigation practice's non-contingency source of income); Albrecht Ritter planned to build a Florida plaintiff-side injury practice; and the founding partners

planned to reinvest the profits of the litigation practice to expand, hire, and grow the litigation practice specifically.

42.    Accordingly, after extended discussions and negotiations about various business dimensions of the new business, effective on November 20, 2025, Mr. Albrecht and Mr. Robert-Ritter formed Albrecht Ritter, PLLC under Florida law (where Mr. Robert-Ritter is barred, practices, and lives). Its equity interests were created upon formation: Mr. Albrecht has a 40% interest in the new entity and Mr. Robert-Ritter has a 60% interest in the new entity.

43.    Contemporaneously with the Firm's formation, Mr. Robert-Ritter updated his public LinkedIn profile and his Florida Bar profile to reflect the new firm.

44.    On November 23, 2025, Albrecht Law's litigation clients received a joint lawyer-departure and client-choice letter, signed by both firms' managers, advising that effective that date Mr. Robert-Ritter would no longer practice with Albrecht Law and would practice with Albrecht Ritter, and setting out each client's right to choose: to remain with Albrecht Law; to continue with Mr. Robert-Ritter at the new firm under a new engagement agreement; or to select other counsel entirely.

45.    The letter explained that the client's file and any trust funds move only at the client's written direction. And it explained that in contingency matters, Albrecht Law is entitled to the reasonable value of its services and costs, with any fee division based on the firms' relative contributions and no increase to the client. And it explained that absent a response by November 28, 2025, the client remained with Albrecht Law under the existing agreement until written instruction otherwise.

46.    Most — but not all — of the clients decided of their own volition to follow Mr. Robert-Ritter to Albrecht Ritter.

47.    Categorically: no funds have ever been transferred between Albrecht Law and Albrecht Ritter in either direction. (Including because Albrecht Law held no client funds in trust for the transitioning clients.)

48.    Similarly, all work performed for Albrecht Law has been billed and collected by Albrecht Law. Albrecht Ritter collects only under new engagements, for matters and work performed on a going-forward basis. Nothing crosses between the two: no receivables or fees were assigned.

49.    Every dollar for Albrecht Law work — including the tens of thousands within the reach of Genesis's active garnishment regarding Mr. Robert-Ritter — inures to Albrecht Law regardless.

50.    In each matter in which a client elected Albrecht Ritter, a new engagement agreement was provided, and the new arrangements govern only work performed on a going-forward basis. Those matters proceeded thereafter with Albrecht Ritter as counsel of record, as reflected on public dockets in multiple jurisdictions. In other words, the revenue belongs solely to Albrecht Ritter, and the Firm acquired those rights on its own, through its own contracts.

51.    From formation forward, Albrecht Ritter's owner-attorneys receive reasonable W-2 compensation for services rendered to the Firm — a market-typical compensation structure for Florida law firms, set with reference to similarly situated litigation attorneys.

52.    Mr. Albrecht and Mr. Robert-Ritter serve as the Firm's two co-equal managers, each holding one vote on all Board matters, and any Board deadlock is resolved by a neutral third party — not by either member. Mr. Robert-Ritter therefore does not control the Firm: he cannot unilaterally set his own compensation, cause the Firm to make or withhold any distribution, or otherwise direct the Firm's managerial affairs.

53.     As of late 2025, after the alleged service of Genesis's garnishment papers, Albrecht Law collected more than $40,000 in fees on matters worked during Mr. Robert-Ritter's 1099 engagement. Those collections were made and retained by Albrecht Law, so that any amounts owed to Mr. Robert-Ritter remained at the garnishee — within the reach of Genesis's writ upon its service.

54.     For the avoidance of doubt: the formation of Albrecht Ritter effectively enlarged, rather than depleted, the estate available to Mr. Robert-Ritter's creditors, by both increasing Mr. Robert-Ritter's earning capacity and presenting a target for the charging order in Florida. Indeed, Genesis is actively seeking a charging order in the Florida enforcement proceeding against Mr. Robert-Ritter's membership interest in Albrecht Ritter — the precise remedy the law affords a judgment creditor of a member — which reaches any distributions payable to him.

55.     The Firm's active matters include contingent-fee engagements representing over $40 million in fees at issue, with resolutions expected within approximately eighteen to twenty-four months. Those engagements — and Mr. Robert-Ritter's earnings from them — are the most realistic source of recovery on Genesis's judgment.

56.     On November 25, 2025, Genesis filed a Philadelphia praecipe for a writ of execution naming Albrecht Law, c/o Mr. Albrecht at his Dallas residence, as garnishee. (Ex. 1.) The praecipe designated Mr. Robert-Ritter as pro se (eleven days after he retained counsel as discussed above) and listed his outdated Albrecht Law e-mail address as his own; no timely notice of the praecipe or the ensuing writ was given to Mr. Robert-Ritter or his counsel.[1]

57.     On December 19, 2025, the execution was docketed in Luzerne County as an out-of-county execution, No. 202514113; the writ issued, enjoining the garnishee "from paying any

---

[1] Genesis's counsel continued to designate Mr. Robert-Ritter as "pro se" in later Pennsylvania filings.

debt to or for the account of" Mr. Robert-Ritter, and was served by sheriff at Mr. Albrecht's residence.

58.    On January 9, 2026, in that same docket, Genesis filed a Motion to Compel Deposition in Aid of Execution and For Sanctions Against Eli Albrecht under Pa. R. Civ. P. 4019, seeking an order compelling Mr. Albrecht's deposition, production of documents, and Genesis's fees and costs for what the motion calls "willful misconduct in refusing to appear" (the "Luzerne Motion"). The Luzerne Motion states that Mr. Albrecht "is the employer of" Mr. Robert-Ritter. It also represents that Mr. Albrecht "has repeatedly agreed that the subpoena was properly served." He had not; no signed acknowledgment of service exists, and an e-mailed subpoena does not constitute service under the Rules.

59.    The Luzerne Motion further asserts that Mr. Robert-Ritter "may have provided significant funds to Albrecht who has then returned these funds" to Mr. Robert-Ritter so as to appear to be proceeds of legal work "when, in fact, they came from another source" — while stating, in the same filing, that Genesis had been "unable to find any evidence" supporting the explanation that the payments were compensation for work performed. Genesis identified no factual basis — no document, no transaction, no witness — for the assertion that any funds moved from Mr. Robert-Ritter to Mr. Albrecht for the purposes of making them appear as proceeds of legal work.

60.    Of course, every fee received by Albrecht Law was paid by clients for legal services rendered, as Albrecht Law's engagement records and payment-platform records reflect; and no funds have ever moved from Mr. Robert-Ritter to Mr. Albrecht. Nor have funds moved from Mr. Robert-Ritter to Albrecht Law, with one exception: out of an abundance of caution, Mr. Robert-

Ritter returned to Albrecht Law funds that Albrecht Law had previously released to him — placing them within the writ's reach at the garnishee, not beyond it.

61.     The Luzerne Motion also includes allegations concerning Mr. Albrecht's personal background bearing no relation to the relief it sought. The assertions served no purpose other than to harass and attack Mr. Albrecht.

62.     By Opinion and Order signed January 5, 2026, and entered January 6, 2026 — three days before the Luzerne Motion was filed, and the same day Genesis's counsel dated the Luzerne Motion — the Circuit Court for Frederick County, Maryland, in an enforcement proceeding brought by a different judgment creditor, struck a charging order (which is entered pro forma upon a request) entered against Mr. Robert-Ritter's purported interest in Albrecht Law, finding on a sworn record that he is not a member of, and holds no economic interest in Albrecht Law. *See Rehab Fin. Grp., L.P. v. Robert-Ritter*, No. C-10-JG-25-002261. (Ex. 2.)

63.     On January 29, 2026, counsel for Mr. Albrecht demanded withdrawal of the Luzerne Motion and identified, among other defects: that the Motion was not properly served on Mr. Albrecht; that its certificate of service recited service by mail that did not occur and misidentified counsel of record; that the underlying subpoena, issued from Philadelphia, commanded a deposition outside the Commonwealth beyond the authority of Pa. R. Civ. P. 234.1; and that Pa. R. Civ. P. 234.5(a) barred sanctions for nonappearance on the served record. On January 30, 2026 — one day after that letter — the Sheriff formally stayed the writ of execution.

64.     On February 27, 2026, Mr. Albrecht appeared and sat for a full-day deposition in Wilkes-Barre, Pennsylvania. Mr. Albrecht also produced documents.

65.     Since then, Mr. Robert-Ritter has again proposed payment structures to Genesis on multiple occasions without Genesis's acceptance. In sum, from December 2024 to the present, Mr.

Robert-Ritter's voluntary proposals — ranging from hundreds of thousands of dollars to structures retiring the judgment in full over time — have met uniform rejection and an increasingly escalated and unreasonable response to his terms.

66.    On March 16, 2026, Genesis, through counsel, sent a written demand to counsel for Mr. Albrecht seeking $1,000,000 from Mr. Albrecht and Albrecht Law by March 23, 2026 at 5:00PM, asserting violations of 12 Pa. C.S. §§ 5104 and 5107(a), fraudulent conveyance under Pennsylvania common law, and conspiracy, and reserving in a footnote further theories the letter describes as "conspiracy to commit fraudulent conveyance," fraud, and "aiding and abetting fraud." (Ex. 3.) Although the letter demands payment from Mr. Albrecht and Albrecht Law alone, the claims it threatens — avoidance of a supposed transfer of Mr. Robert-Ritter's interest into Albrecht Ritter, and recovery of its value — are necessarily claims against the Firm as the alleged transferee; Genesis has expressly threatened suit against Albrecht Ritter too. The deadline lapsed without suit.

67.    Genesis and its counsel received written notice that the unresolved accusations are causing concrete harm to identified transactions and relationships, which affect the ordinary course operation of Albrecht Ritter, and Genesis thereafter renewed its demands.

68.    On May 18, 2026, in the Florida enforcement proceeding, Genesis filed an opposition characterizing Mr. Robert-Ritter as the holder of equity whose W-2 wages are "actually distributions," and asserting that Mr. Albrecht had provided extensive evidence against Mr. Robert-Ritter. No such evidence exists, and Genesis has never identified any.

69.    As noted, every enforcement mechanism directed at Mr. Robert-Ritter's interest in, or compensation from, Albrecht Ritter — including the charging order Genesis seeks and its contention that Mr. Robert-Ritter's W-2 compensation is "actually distributions" — is properly

and actively pending before the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, in the enforcement proceeding described above, No. 2025001121CA01. Plaintiffs do not ask this Court to decide any of those questions, and nothing in this action seeks to limit, delay, or interfere with that court's administration of them.

70.    In June 2026, Genesis served its first written request for production on Mr. Robert-Ritter, nearly two years after entry of the judgment.

71.    Today, the Firm stands at the letter-of-intent stage with a litigation funder, just days from entering diligence, and approximately thirty days from a contemplated closing, and is actively working on hiring equity partners and associates. Both of these activities require disclosure of, and representations concerning, threatened claims against the company and its principals. Plaintiffs have paused the contemplated steps, while Genesis's accusations remain unresolved.

## COUNT I: CLAIM FOR DECLARATORY RELIEF PURSUANT TO 28 U.S.C. § 2201

72.    Plaintiffs incorporate by reference paragraphs 1 through 71 above as though set forth in full here.

73.    An actual controversy has arisen and presently exists between Plaintiffs and Defendant as to their respective rights and obligations. Defendant has threatened suit against Mr. Albrecht and Albrecht Law for a supposed fraudulent conveyance and a conspiracy to fraudulently convey. Defendant has also threatened claims against Albrecht Ritter. These claims necessarily reach the Firm because the relief Genesis's theories contemplate—avoidance of a supposed transfer and recovery of its value—could be had only in an action against the Firm as the alleged transferee. Genesis's threatened suit thus places the Firm's formation, staffing, and revenues directly in controversy.

74.    Albrecht Ritter joins this action solely to resolve that transfer question — whether its formation, engagements, revenues, or ordinary-course governance involve any transfer of an

asset of Mr. Robert-Ritter or of Albrecht Law — and for no other purpose. The Firm seeks no ruling on the mechanics of Genesis's enforcement against Mr. Robert-Ritter, including whether his compensation is garnishable or is subject to the charging order Genesis seeks; those questions are properly and actively before the Miami-Dade court.

75.     Neither Mr. Albrecht nor Albrecht Law can be liable under Genesis's theories because neither is a debtor of Genesis nor a transferee of any asset of the debtor. Further, there was no "asset" that was transferred — much less fraudulently away from a debtor. Without a transfer of an asset from a debtor, the fraudulent conveyance claim (or any conspiracy based on it) cannot exist. Nor can Albrecht Ritter be liable as a supposed transferee: the Firm received no asset of Mr. Robert-Ritter or of Albrecht Law; its engagements and revenues arise from its own contracts, entered for value with clients exercising their right to choose counsel; and its equity was created — not conveyed — at formation.

76.     And yet, Genesis has demanded $1 million from Plaintiffs Albrecht Law and Mr. Albrecht on these theories. That unretracted, million-dollar demand against Plaintiffs is itself a concrete and particularized controversy as to Plaintiffs' own liability, independent of the transactional harms that flow from it described below.

77.     This is causing real harm: the Firm is seeking to hire new partners, which would necessarily dilute the membership interests of all members (in exchange for fair value), including Mr. Albrecht's, pro rata. Genesis's asserted theories cloud the Firm's ability to take those acts: under Genesis's theories, the Firm's issuance of company-created equity could be (wrongfully) characterized as participation in, or receipt of a benefit from, a voidable transfer.

78.     The Firm is also engaged with a litigation funder at the letter of intent (pre-diligence) stage.

79.     Diligence for both steps requires disclosure of, and representations concerning, threatened claims against the company and its principals. Accordingly, neither Mr. Albrecht nor Albrecht Ritter can move forward with those disclosures at present and have been forced to pause the contemplated steps while Genesis's accusations remain unresolved. This is a present and continuing impairment of the Firm's operations.

80.     The controversy is ripe now. The accusations raised in the March 16 Letter are not harmless even though they are unadjudicated. The improper threats are causing material harm to Plaintiffs, and that harm will continue absent a declaration in Plaintiffs' favor. The freeze on the transactions described above is present and continuing, and will persist until the matters set forth below are adjudicated or Genesis's accusations are withdrawn with binding effect.

81.     To resolve this dispute, Plaintiffs respectfully request that this Court declare the parties' respective rights and obligations; in particular, Plaintiffs seek a judicial declaration that:

a.      Mr. Robert-Ritter never held any membership, ownership, or any other transferable interest in Albrecht Law, LLC, as the Maryland court already held;

b.      Plaintiffs are neither the transferor of, nor the transferee of any asset of Mr. Robert-Ritter, and therefore cannot, as a matter of law, be liable or engage in any alleged fraudulent conveyance;

c.      Albrecht Ritter's client engagements, receivables, and revenues are property of Albrecht Ritter, acquired through its own contracts for value, and are not subject to avoidance, attachment, or turnover on the theories asserted in Genesis's March 16, 2026 demand (this declaration is without prejudice to distributions payable to Mr. Robert-Ritter under any charging order administered by the Florida court);

d. because there is no primary liability for fraudulent conveyance, there can be no secondary liability on a conspiracy or aiding-and-abetting theory;

e. the formation of a new litigation-focused boutique Albrecht Ritter created new equity in a new firm for Mr. Robert-Ritter and did not involve the transfer of any "asset" from Albrecht Law or of any asset of Mr. Robert-Ritter;

f. the formation, staffing, and compensation structure of Albrecht Ritter effected no transfer of any asset of Mr. Robert-Ritter and no voidable transfer or obligation under chapter 726, Florida Statutes, or, in the alternative, under 12 Pa. C.S. §§ 5101–5114;

g. Plaintiffs have no liability to Genesis — under chapter 726, Florida Statutes, under 12 Pa. C.S. §§ 5101–5114, or at common law, including for conspiracy, fraud, or aiding and abetting — arising from the formation, staffing, or structure of Albrecht Ritter, PLLC, from Mr. Robert-Ritter's contractor engagement at Albrecht Law, or from the matters asserted in Genesis's March 16, 2026 demand;

h. Albrecht Ritter may, in the ordinary course of business, grow its litigation practice, admit new equity members and issue company-created equity for reasonably equivalent value (including, for instance, work performed, originations, or buy-ins), and Mr. Albrecht may vote for and effectuate those admissions and issuances as a member, with pro-rata dilution applying equally to every member of the Firm, including himself; such acts neither constitute a voidable transfer nor expose any Plaintiff to liability to Genesis; and

i. Albrecht Ritter may enter into litigation-financing transactions for reasonably equivalent value in the ordinary course of business, and Mr. Albrecht may vote for and effectuate that entry as a member; neither the transaction nor that vote constitutes a voidable transfer or exposes any Plaintiff to liability to Genesis.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant as follows:

A. Declaring, pursuant to 28 U.S.C. §§ 2201 and 2202, that:

a.     Mr. Robert-Ritter never held any membership, ownership, or any other transferable interest in Albrecht Law, LLC, as the Maryland court already held;

a.     Plaintiffs are neither the transferor of, nor the transferee of, any asset of Mr. Robert-Ritter, and therefore cannot, as a matter of law, be liable for a fraudulent conveyance;

b.     Albrecht Ritter's client engagements, receivables, and revenues are property of Albrecht Ritter, acquired through its own contracts for value; they are not assets of Mr. Robert-Ritter or of Albrecht Law, and are not subject to avoidance, attachment, or turnover on the theories asserted in Genesis's March 16, 2026 demand (this declaration is without prejudice to distributions payable to Mr. Robert-Ritter under any charging order administered by the Florida court);

c.     because there is no primary liability, there can be no secondary liability on a conspiracy or aiding-and-abetting theory;

d.     the formation of a new litigation-focused boutique Albrecht Ritter created new equity in a new firm for Mr. Robert-Ritter and did not involve the transfer of any "asset" from Albrecht Law or of any asset of Mr. Robert-Ritter;

e.     the formation, staffing, and structure of Albrecht Ritter effected no transfer of any asset of Mr. Robert-Ritter and no voidable transfer or obligation under chapter 726, Florida Statutes, or, in the alternative, under 12 Pa. C.S. §§ 5101–5114;

f.     Plaintiffs have no liability to Genesis — under chapter 726, Florida Statutes, under 12 Pa. C.S. §§ 5101–5114, or at common law, including for conspiracy, fraud, or aiding and

abetting — arising from the formation, staffing, or structure of Albrecht Ritter, PLLC, from Mr. Robert-Ritter's contractor engagement at Albrecht Law, or from the matters asserted in Genesis's March 16, 2026 demand;

g.      Albrecht Ritter may, in the ordinary course of business and to grow its litigation practice, admit new equity members and issue company-created equity for reasonably equivalent value (including, for instance, work performed, originations, or buy-ins), and Mr. Albrecht may vote for and effectuate those admissions and issuances as a member, with pro-rata dilution applying equally to every member of the Firm, including himself; such acts neither constitute a voidable transfer nor expose any Plaintiff to liability to Genesis; and

h.      Albrecht Ritter may enter into litigation-financing transactions for reasonably equivalent value in the ordinary course of business, and Mr. Albrecht may vote for and effectuate that action; neither the transaction nor that vote constitutes a voidable transfer or exposes any Plaintiff to liability to Genesis;

B.      Awarding Plaintiffs their attorneys' fees, costs, and other expenses incurred in this action, to the extent permitted by law; and

C.      Granting such other and further legal and/or equitable relief as this Court deems just and proper.

Respectfully submitted,

DATED: July 7, 2026

By: /s/ Mara Terrana, Esq.
Francis J. Hoegen, Esq.
PA Bar No. 55667
William L. Byrne, Esq.
PA Bar No. 85076
Mara Terrana, Esq.
PA Bar No. 332493
HOEGEN & ASSOCIATES, P.C.
152 S Franklin St

Wilkes-Barre, PA 18701
Telephone: 570-820-3332
Email: fhoegen@hoegenlaw.com


Bret R. Vallacher (*pro hac vice* forthcoming)
Jeremy G. Mallory (*pro hac vice* forthcoming)
MASSEY & GAIL LLP
1000 Maine Avenue SW
Suite 450
Washington, D.C. 20024
Telephone: 202-780-0351
Email: bvallacher@masseygail.com
Email: jmallory@masseygail.com

*Attorneys for Plaintiffs*